Kevin N. Ainsworth (KA 8493)
MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.
666 Third Avenue, 25th Floor
New York, New York 10017
Telephone: (212) 935-3000
Facsimile: (212) 983-3115

Andrew Skale, Esq. (pro hac vice)
MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO, P.C.
5355 Mira Sorrento Place
Suite 600
San Diego, CA 92121
Telephone: (858) 320-3000
Facsimile: (858) 320-3001

*Attorneys for Defendant/Counterclaim Plaintiff Clariti Eyewear, Inc.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
——————————————————————X
ASPEX EYEWEAR, INC.; AND                    :
CONTOUR OPTIK, INC.,                        :
                                            :
                    Plaintiffs,             :          Civil Action No. 07-cv-2373 (DC) (THK)
                                            :
        -against-                           :
                                            :
CLARITI EYEWEAR, INC.,                      :
                                            :
                    Defendant.              :
——————————————————————X
CLARITI EYEWEAR, INC.,                      :
                                            :
            Counterclaim Plaintiff,         :
                                            :
        -against-                           :
                                            :
ASPEX EYEWEAR, INC.; AND                    :
CONTOUR OPTIK, INC.,                        :
                                            :
            Counterclaim Defendants.        :
——————————————————————X

**REPLY MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION OF DEFENDANT CLARITI EYEWEAR, INC.,**
**FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ...................................................................................... ii

I.     PLAINTIFFS SHOULD BE ESTOPPED FROM FURTHER
       PURSUING THIS ACTION .......................................................................... 1

       A.    Aspex's 003 Letters Unequivocally Accused Clariti of
             Infringement............................................................................ 2

       B.    Aspex's Threats of Immediate Litigation in 2003 Were Not
             Followed by Mere Silence ............................................................. 3

       C.    Clariti Has Been Severely and Material Prejudiced Through Its
             Reliance On Aspex's Misleading Conduct................................... 4

       D.    Plaintiffs' Willful Infringement Allegation Is Irrelevant.............. 6

II.    ALTERNATIVELY, EACH ASSERTED CLAIM IS INVALID ..................... 7

       A.    The PTO Has Recently Rejected the Only Claim of the '545 Patent
             In Issue ......................................................................................... 7

       B.    Claims 10 and 12 of the '747 Patent Should Likewise Be Found
             Invalid ........................................................................................... 8

III.   THE '747 PATENT IS UNENFORCEABLE AS A MATTER OF
       LAW .............................................................................................................. 9

IV.    CONCLUSION .............................................................................................. 10

# TABLE OF AUTHORITIES

## FEDERAL CASES

*ABB Robotics v/ GMFanuc Robotics Corp.*
52 F.3d 1062, 1063 (Fed. Cir. 1995)........................................................................... 5

*A. C. Aukerman Co. v. R.L. Chaides Constr. Co.*
960 F.2d 1020, 1044 (Fed. Cir. 1992)......................................................................... 6

*Brown v. Barbacid*
436 F.3d 1376, 1380 (Fed. Cir. 2006)......................................................................... 8

*Critikon Inc. v. Becton Dickinson Vascular Asscess, Inc.*
120 F.3d 1253, 1256 (Fed. Cir. 1997)......................................................................... 10

*Gasser Chair Co. v. Infanti Chair Mfg. Corp.*
60 F.#d 770, 775-76 (Fed. Cir. 1995) ......................................................................... 6

*Griffith v. Kanamaru*
816 F. 2d 624, 626 (Fed. Cir. 1987)............................................................................ 8

*Life Techs., Inc. v. Clontech Lab., Inc.*
224 F.3d 1320, 1324 (Fed. Cir. 2000)......................................................................... 10

*Meyers v. Brooks Shoe, Inc.*
912 F.2d 1459, 1464 (fed. Cir. 1990) ......................................................................... 4

*Monsanto v. Ayer BioScience N.V.*
514 F.3d 1229, 1235 (Fed. Cir. 2008)......................................................................... 10

*Monsanto Co. v. Mycogen Plant Science, Inc.*
261  F.3d 1356, 1362-63 (Fed. Cir. 2001) .................................................................. 8

*Ormco Corp. v. Allign Tech., Inc.*
463 F.3d 1299, 1311-12 (Fed. Cir. 2006) ................................................................... 9

*Scholle Corp. v. Blackhawk Molding Co.,*
133 F.3d 1469, 1472 (Fed. Cir. 1998).......................................................................... 3, 4

*Studiengesselschaft Kohle, m.b.H. v. Dart Indus., Inc.*
726 F.2d 724, 729 (Fed. Cir. 1984)............................................................................. 4

*Wafer Shave, Inc. v. Gillette Co.*
857 F. Supp. 112, 127, 129 ( D. Mass. 1993) ............................................................. 3, 4

Plaintiffs' opposition does not allege there are material facts in dispute. Plaintiffs instead urge the Court to draw unreasonable inferences and the wrong legal conclusions from the undisputed facts.

Aspex undeniably accused Clariti of infringing the '545 and '747 patents in 2003, and then, after a response from Clariti, dropped its claims of infringement for four years. Clariti relied on Plaintiffs' misleading conduct. Having lain in waiting so long after that misleading conduct (to improperly bolster a damages claim), Plaintiffs now should be estopped from pursuing their claims.

Alternatively, summary judgment should be granted finding the claims of the '747 and '545 Patents invalid. It is undisputed that the PTO has ordered reexamination of both the '747 and '545 patents; those reexaminations provide a solid roadmap showing the invalidity of each asserted claim. Indeed, after Clariti filed its opening papers (and 8 days before Plaintiffs' filed their opposition papers), the PTO rejected claim 23 of the '545 patent—the only claim of that patent asserted here. Tellingly, Plaintiffs' opposition fails to address that fact.

Finally, for the '747 patent, Plaintiffs admit that the inventor, David Chao, knew about the Madison Application and was upset about it, yet he failed to disclose what he knew to the PTO during the '747 patent's prosecution. None of Plaintiffs' after-the-fact rationalizations excuses Chao's breach of his duty of candor to the PTO. The '747 patent is therefore unenforceable for inequitable conduct.

## I.   PLAINTTIFFS SHOULD BE ESTOPPED FROM FURTHER PURSUING THIS ACTION.

Plaintiffs do not dispute any of the relevant facts showing that their conduct was significantly misleading. Notably, Plaintiffs do not dispute that:

- Aspex first accused Clariti of infringing five patents, including the '545 and '747 patents in 2003, four years before bringing suit;

- In 2003, Clariti immediately responded asking Aspex to identify the claims it thought Clariti infringed for each patent, and requested that Aspex provide file histories for each of the patents;

- In response, Aspex identified claims from only two of the five patents. Aspex did not identify any claims of the '545 or '747 patents, and Aspex did not in any way indicate to Clariti that Aspex continued to believe Clariti infringed those patents;

- Clariti immediately responded, telling Aspex it did not infringe any of the identified claims; and

- Plaintiffs thereafter fell silent for **_over three years_**, while Clariti's AIRMAG business burgeoned.[1]

Plaintiffs torture the only reasonable conclusions that can be drawn from these facts. Those attempts fail.

### A.      Aspex's 2003 Letters Unequivocally Accused Clariti of Infringement.

Plaintiffs argue that Aspex's conduct was not misleading because its 2003 letters did not threaten litigation but instead invited a "reasonable resolution." The letters speak for themselves; they accused Clariti of infringement. Those letters told Clariti it was "on notice" that Aspex owned the "exclusive" rights to the '747 and '545 patents, and that it "continues to be [Aspex's] strong intention to fully and vigorously enforce" those rights.[2] Further, Aspex demanded that Clariti *immediately stop selling its products*—demanding a confirmation that Clariti has "stopped selling any frames, frame attachments or parts in violation of our rights under the patent."[3] But the letters did not stop there, they demanded that Clariti "supply [Aspex] with the identity of the sources of these goods and information concerning the number of pieces sold to date."[4] Finally, they warned Clariti of the remedies Aspex could win through litigation, including injunctive relief, attorneys' fees and up to treble damages, and demanded an "immediate reply to this very

---

[1]   Fact Nos. 4-22.

[2]   Yonemoto Decl., Exs. C, D.

[3]   *Id.*

[4]   *Id.*

urgent and serious matter." Aspex's message was clear: immediately stop producing your product, tell us who your suppliers are, or we will sue you for infringement. These are precisely the type of accusations that trigger estoppel.[5]

### B.    Aspex's Threats of Immediate Litigation in 2003 Were <u>Not</u> Followed by Mere Silence.

Aspex also argues that its letters were followed by mere silence, and thus there was no misleading conduct. That argument is belied by the facts. It is undisputed that Clariti swiftly responded to Aspex's letter. Clariti took the accusations seriously and wrote to Aspex, asking it to identify which claims of the five allegedly infringed patents, including the '545 and '747 patents, Aspex "believe may cover Clariti's products"; Clariti also asked for copies of the prosecution files for the patents.[6] Aspex responded, but did not identify any claims of the '545 or '747 Patents as being infringed. Instead, Aspex identified patents <u>other than</u> the '545 and '747 patents, and provided file histories for patents <u>other than</u> the '545 or '747 patents.[7] Aspex said nothing to suggest that its analysis was incomplete or preliminary, or that further accusations regarding the omitted patents would follow.[8]

The only objectively reasonable conclusion to be drawn from those facts are that by May 12, 2003, Aspex reevaluated its accusations and no longer accused Clariti of infringing the '545 and '747 patents. Clariti believed as much, and there is no contrary evidence.[9]

Plaintiffs show a good sense of humor, if not poor judgment, when they argue that Clariti failed "to make its position known to Aspex" and "denied Aspex the opportunity to explain that

---

[5]   *See* Clariti's Opening Brief, at 9-10; *Scholle Corp. v. Blackhawk Molding Co.*, 133 F.3d 1469, 1472 (Fed. Cir. 1998); *Wafer Shave, Inc. v. Gillette Co.*, 857 F. Supp. 112 (D. Mass. 1993).

[6]   Yonemoto Decl., Ex. E, at 1-2, ¶1, 7.

[7]   Yonemoto Decl., Ex. F.

[8]   *Id.*

[9]   *See* Yonemoto Decl., ¶¶11, 13.

it intended to fully enforce its patents."[10] Clariti's intent was overt for all the world to see—Clariti continued selling the accused products. Aspex had years in which to "explain" that it intended to fully enforce its patents. But Aspex said and did nothing. The law is clear—such silence and inaction is misleading.[11]

### C.    Clariti Has Been Severely and Materially Prejudiced Through Its Reliance On Aspex's Misleading Conduct.

The undisputed facts also show that Clariti's decision to continue selling AIRMAG was heavily influenced by Aspex's misleading conduct.[12] Ms. Yonemoto testified—without contradiction—that Aspex's 2003 letter exchange was central to Clariti's decision to go forward with its investment in AIRMAG (a young product at the time).[13] Plaintiffs argue that no "e-mails, memoranda or other evidence" from 2003-2006 show Clariti's reliance—but the reliance plainly is documented in the correspondence with Aspex, followed by Clariti's undisputed records of sales growth.[14] Aspex offers no evidence to the contrary. Accordingly, the only reasonable inference is that Clariti (a) relied on Aspex's withdrawal of its accusations of infringement, and (b) continued selling the accused products because of Aspex's conduct.

Plaintiffs' attempts to belittle the substantial economic prejudice suffered by Clariti also fail. Aspex asks the Court to infer that Clariti's increased AIRMAG sales from 2003-2006 "would have happened regardless of Aspex's activities."[15] But that inference is not reasonable

---

[10]    *See* Plaintiffs' Memorandum in Opposition to Defendant's Motion for Summary Judgment ("Pls.' Mem.") at 5.

[11]    *Gillette*, 857 F. Supp. at 124, 127, 129; *Scholle*, 133 F.3d at 1472. Aspex's cited cases are inapposite. Both *Meyers v. Brooks Shoe, Inc.*, 912 F.2d 1459, 1464 (Fed. Cir. 1990) and *Studiengesellschaft Kohle, m.b.H. v. Dart Indus., Inc.*, 726 F.2d 724, 729 (Fed. Cir. 1984), stand for the unremarkable proposition that mere invitations to deal (as opposed to accusations of infringement) followed by silence alone are insufficient to establish estoppel as a matter of law. But those facts are far removed from Aspex's conduct.

[12]    Yonemoto Decl., ¶¶ 8, 11, 13; Fact Nos. 10, 20, 23.

[13]    Yonemoto Decl., ¶ 8; Fact No. 10.

[14]    *See* Yonemoto Decl., Exs. C-F.

[15]    Pls.' Mem. at 9.

4

and is contrary to the unrefuted testimony that had Aspex sued in 2003, "given the newness of the products and Clariti's lack of investment in them, Clariti would very likely have simply decided to stop selling the AIRMAG products and pursued other business opportunities."[16]

Clariti's move to a larger facility and the costs associated with that move qualify as prejudice because the move happened years after Aspex dropped the infringement allegation in 2003. The move was necessitated in large part because of the expansion of AIRMAG that had occurred during the three years of Aspex's misleading silence.[17] The fact that Aspex raised and then dropped its infringement claim again in late 2006 also supports Clariti's estoppel defense. Clariti wrote to Aspex in November 2006, stating in detail Clariti's position why it did not infringe the '747 or '545 patents and why Aspex was estopped from so claiming. Despite having a clear "opportunity to explain that it intended to fully enforce its patents," Aspex did not respond.[18] Clariti's move occurred during yet another period of misleading silence by Aspex.

Aspex also attempts to belittle Clariti's pursuit and development of its AIRMAG trademark, arguing it only costs only $2000 to register a mark. Again, this misses the point. Not only did Clariti register its AIRMAG mark in 2004, Clariti has continued to promote and use the mark on its products, thereby developing tremendous goodwill in that mark.[19]

As there are no material issues of fact, and the reasonable inferences all favor Clariti, the Court should dismiss Plaintiffs' claims.[20]

---

[16]   Yonemoto Decl., ¶ 8, Fact No. 10.

[17]   Yonemoto Decl., ¶ 19, Fact No. 35.

[18]   *See* Yonemoto Decl., Ex. O.

[19]   *Id.*, ¶ 16. A substantial part of Clariti's trade show expenditures were devoted to AIRMAG, and one of the reasons for its expansion of its sales force was AIRMAG. *Id.*, ¶¶ 17-18.

[20]   *ABB Robotics v. GMFanuc Robotics Corp.*, 52 F.3d 1062, 1063 (Fed. Cir. 1995) ("Being an equitable doctrine, estoppel is committed to the sound discretion of the trial judge….) (affirming summary judgment for alleged infringer based on equitable estoppel).

**D.    Plaintiffs' Willful Infringement Allegation Is Irrelevant.**

As a final effort to avoid estoppel, Plaintiffs try to cloud the issue by pointing to its

allegations of willful infringement. This argument is a diversion and misleading. None of the

cases cited by Plaintiffs supports the conclusion they urge, namely, that a *finding* as to willful

infringement must precede any estoppel claim.[21] Indeed, willful infringement claims are part of

nearly every infringement case. If Plaintiffs were correct, estoppel would never be appropriate

for summary judgment.

Moreover, Plaintiffs offer no evidence of willfulness. The uncontroverted evidence is

clear: Plaintiffs misled Clariti into thinking that *Plaintiffs did not believe* the '545 and '747

Patents were infringed. Thus, Plaintiffs' argument and claim charts purporting to show that

Clariti's products are a "virtual copy" of the claimed invention are irrelevant.[22] Plaintiffs offer no

evidence that Clariti knew or had reason to believe that its products infringed the '545 and '747

Patents (and Clariti denies infringement). Since Aspex's own actions showed that it did not

believe there was infringement, and Clariti had no reason to believe it infringed, Clariti certainly

had no reason to spend scarce resources to obtain an opinion of counsel as to non-infringement.[23]

---

[21]   For example, while Aspex cites *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1044 (Fed. Cir. 1992) and *Gasser Chair Co. v. Infanti Chair Mfg. Corp.*, 60 F.3d 770, 775-76 (Fed. Cir. 1995), those courts commented on the district court's failure to consider *undisputed* evidence of copying by the alleged infringer (*Gasser*) or testimony by the alleged infringer that they copied the patented subject matter (*Aukerman*) in evaluating the alleged infringer's laches defense. No such evidence is in the record here. Moreover, neither *Aukerman*, *Gasser* nor any other case cited by Aspex holds that summary judgment of equitable estoppel or laches is improper where there are claims of willful infringement.

[22]   While the issue of infringement is irrelevant to this motion, Clariti has provided charts showing why Plaintiffs' infringement accusations are unfounded and unsupported. Supplemental Declaration of Andrew D. Skale ("Supp. Skale Decl."), Ex. 1.

[23]   Regardless, after the second accusation by Aspex in 2006, Clariti promptly obtained an opinion of counsel of non-infringement through its manufacturer. (Pls.' Mem. at 8).

## II.   ALTERNATIVELY, EACH ASSERTED CLAIM IS INVALID.

### A.   The PTO Has Recently Rejected the Only Claim of the '545 Patent In Issue.

Claim 23 is the *only* claim of the '545 patent at issue. On April 23, 2008 (well before

Plaintiffs filed their opposition brief), the PTO issued its Office Action in Ex Parte

Reexamination, *rejecting* claim 23 "under 35 U.S.C. 103(a) as being unpatentable over Martin-

'244 in view of Nishioka-5642177 or Sadler-5416537." [24] Plaintiffs' opposition mentions

nothing about the PTO's April 23 Order, but instead Plaintiffs argue, inaccurately, that the PTO

has not made a finding that any claim of the '545 patent is invalid! (Pls.' Mem. at 13).

And Plaintiffs incorrectly label as "unsupported" the conclusion that claim 23 is obvious

in light of Martin, taken in view of Nishioka and/or Sadler. (Pls.' Mem. at 21). The PTO has

rejected claim 23 in light of that same prior art and gave detailed reasons for its rejection.

Plaintiffs' argument that Martin is not prior art (Pls.' Mem. at 21), relies on their interpretation of

the significance of the prosecution history that led to the '545 Patent's issuance. But the PTO had

the '545 patent's prosecution history at its disposal when it found that Martin is prior art and

renders claim 23 invalid.

Moreover, Plaintiffs erroneously argue that Martin is not prior art to the '545 Patent.

Plaintiffs' argument relies in part on a misrepresentation of the filing date of Martin: Plaintiffs

assert that "Richard Chao invented prior to May 13, 2005—*i.e.*, before Martin's filing date."

(Pls.' Mem. at 21). But Martin was filed ten years earlier, on August 3, 1995. [25] Even if Plaintiffs'

"corrected" brief is in error, and they meant that Chao's invention date was prior to Martin's

actual filing date, they have not rebutted Clariti's showing that Martin is prior art. In order to

show that Chao's date of invention preceded Martin's filing date, Plaintiffs must provide

---

[24] *See* Supp. Skale Decl., Ex. 2 at 3.
[25] Skale Decl., Ex. R (at p. 60, Ex. D) (Martin patent).

evidence that after conceiving of the '545 invention, Chao was continuously diligent in reducing that invention to practice until the filing date of Martin.[26] Plaintiffs have offered *no* such evidence. Accordingly, they have not rebutted Clariti's showing that Claim 23 is invalid.

In short, the PTO has now rejected the only claim at issue in the '545 Patent. The PTO laid out a clear, unmistakable roadmap as to why that claim is invalid. Although in theory the PTO could have used a broader interpretation of Claim 23 than the Court would use, Plaintiffs offer no reason as to why this is material; Plaintiffs do not even discuss claim interpretation of the '545 patent, let alone argue that the PTO's interpretation could not be adopted by the Court. Accordingly, the Court should invalidate claim 23.

**B.    Claims 10 and 12 of the '747 Patent Should Likewise Be Found Invalid.**

Plaintiffs also do not dispute that the PTO has ordered reexamination of each asserted claim of the '747 patent because it has found substantial questions regarding the validity of those claims. That reexamination order provides a solid roadmap that the Court should follow in rendering its own judgment of invalidity.

Although Plaintiffs argue the PTO's findings are not binding, Plaintiffs cite no authority for the conclusion that the Court, in its discretion, cannot use the PTO's guidance. Instead, Plaintiffs spend six pages making arguments that have been in large part addressed and dismissed in the PTO's order granting reexamination.[27] And Plaintiffs make misleading and

---

[26]   *See, e.g.*, *Monsanto Co. v. Mycogen Plant Science, Inc.*, 261 F.3d 1356, 1362-63 (Fed. Cir. 2001) ("Thus, a showing of diligence is necessary for a party who was first to conceive but second to reduce to practice."); *Brown v. Barbacid*, 436 F.3d 1376, 1380 (Fed. Cir. 2006) ("inventor's testimony concerning his diligence be corroborated"); *see also Griffith v. Kanamaru*, 816 F.2d 624, 626 (Fed. Cir. 1987) (to establish reasonable diligence, evidence of diligence in reducing to practice must account for entire relevant period).

[27]   Skale Decl., Ex. T; Fact Nos. 52-54.

irrelevant arguments regarding what Clariti supposedly failed to include as part of its motion on invalidity.[28] The PTO's analysis is proper and should be followed to invalidate these claims.

## III.    THE '747 PATENT IS UNENFORCEABLE AS A MATTER OF LAW.

The evidence regarding inequitable conduct is unrefuted. Plaintiffs do not dispute that (a) Chao, the inventor of the '747 Patent, learned of the Madison Application; (b) that he became "very upset" upon learning of the Madison Application; or (c) that he learned of this information before or during the prosecution of the '747 patent application. Nor do they dispute that Chao did not disclose the information known to him to the PTO.

Nor is materiality genuinely in dispute. The Madison Application made Chao "very upset," and the PTO found that the Madison Patent raises "substantial questions of patentability" and that a "reasonable examiner would consider the Madison reference … important."[29] Notwithstanding Plaintiffs' vaguely argued distinctions between the Madison Application and the '747 Patent, the only reasonable conclusion is that the reference was material.

Plaintiffs do not dispute that direct evidence of wrongful intent is rarely available,[30] but they ask the Court to overlook the strong evidence of intent and, instead, to draw far-fetched inferences. Such inferences are insufficient to overcome a motion for summary judgment. Plaintiffs suggest, for example, that Chao did not have the serial number of, and never saw, the Madison application that made him "very upset." Plaintiffs offer no evidence of that nature. Moreover, those facts are immaterial. Chao had a duty to disclose material information within his knowledge. That duty arose when he learned the existence and nature of the co-pending Madison

---

[28]    For example, Aspex criticizes Clariti for not including an analysis of "secondary considerations," such as the purported commercial success of the patented invention. (Pls.' Mem. at 20.) "Evidence of commercial success, or other secondary considerations, is only significant if there is a nexus between the claimed invention and the commercial success." *Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1311-12 (Fed. Cir. 2006). Aspex offers *no evidence* of such a nexus.

[29]    Skale Decl., ¶ 6, Ex. T, at pp. 4-5.

[30]    *See* Clariti's Opening Brief, at 23.

9

application, regardless of whether he had seen a copy of it or knew its serial number.[31] And while Plaintiffs suggest (again without evidentiary basis) that Chao was unfamiliar with the contents of the Madison Application (Pls.' Mem. at 23), Chao's own admissions show otherwise. He testified that he knew enough about the Madison Application and what it covered to enable him to file patent applications in different embodiments for his own designs.[32]

Once the threshold levels of materiality and intent are met, "the ultimate determination of inequitable conduct is within the discretion of the trial court, which must make the equitable judgment concerning whether the applicant's conduct is so culpable that the patent should not be enforced."[33] Under the circumstances presented here, the Court should find the '747 Patent unenforceable. Summary judgment of inequitable conduct is therefore appropriate.[34]

## IV.   CONCLUSION.

Clariti's motion should be granted, and this case should be declared exceptional.


Dated: May 15, 2008                    MINTZ LEVIN COHN FERRIS GLOVSKY
                                       and POPEO, P.C.


                                       By:    s/Kevin N. Ainsworth
                                       Kevin N. Ainsworth (KA 8493)
                                       666 Third Avenue, 25th Floor
                                       New York, New York 10017
                                       Telephone: (212) 935-3000
                                       Facsimile: (212) 983-3115
                                       *Attorneys for Clariti Eyewear, Inc.*

---

[31]   37 C.F.R. § 1.56(a). This duty extends beyond patents and even patent applications. *See, e.g.*, *Monsanto v. Bayer BioScience N.V.*, 514 F.3d 1229, 1235 (Fed. Cir. 2008) (inequitable conduct where applicant Bayer failed to disclose an employee's notes regarding material prior art). Thus, Chao should have at least disclosed that an inventor, Julie Madison, had a pending patent application that relates to his invention (if not more).

[32]   Skale Decl., Ex. X, at 237:19-239:1.

[33]   *Life Techs., Inc. v. Clontech Lab., Inc.*, 224 F.3d 1320, 1324 (Fed. Cir. 2000).

[34]   *See, e.g., Critikon Inc. v. Becton Dickinson Vascular Access, Inc.*, 120 F.3d 1253, 1256 (Fed. Cir. 1997) (affirming summary judgment of inequitable conduct where facts not in dispute).

4324932v.3