Kevin N. Ainsworth (KA 8493)
MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.
666 Third Avenue, 25th Floor
New York, New York 10017
Telephone: (212) 935-3000
Facsimile: (212) 983-3115

*Attorneys for Defendant/Counterclaim Plaintiff Clariti Eyewear, Inc.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ————————————————————X | |
| ASPEX EYEWEAR, INC.; AND<br>CONTOUR OPTIK, INC., : | |
| : | |
| Plaintiffs, : | Civil Action No. 07-cv-2373 (DC) (THK) |
| : | |
| -against- : | |
| : | |
| CLARITI EYEWEAR, INC., : | |
| : | |
| Defendant. : | |
| ————————————————————X | |
| CLARITI EYEWEAR, INC., : | |
| : | |
| Counterclaim Plaintiff, : | |
| : | |
| -against- : | |
| : | |
| ASPEX EYEWEAR, INC.; AND<br>CONTOUR OPTIK, INC., : | |
| : | |
| Counterclaim Defendants. : | |
| ————————————————————X | |

**SUPPLEMENTAL DECLARATION OF ANDREW D. SKALE IN SUPPORT OF**
**MOTION OF DEFENDANT CLARITI EYEWEAR, INC.,**
**FOR SUMMARY JUDGMENT**

I, Andrew D. Skale, hereby declare the following under penalty of perjury:

     1.    I am over 18 years of age.  Except for information set forth on information and belief, I have personal knowledge of the facts set forth in this declaration and could and would competently testify as to the same.

     2.    I am a member in good standing of the bar of the State of California.  I am a member of Mintz Levin Cohn Ferris Glovsky and Popeo, P.C., attorneys for Clariti Eyewear, Inc.  I submit this declaration in support of Clariti's Motion for Summary Judgment.

     3.    Attached as Exhibit 1 to this declaration is a true and correct copy of excerpts from "Defendant's Second Supplemental Responses and Objections to Plaintiffs' First Set of Interrogatories," served on opposing counsel on or about January 8, 2008, including the Second Supplemental Response to Interrogatory No. 16 and the chart that was attached to the supplemental responses as Exhibit A.

     4.    Attached as Exhibit 2 to this declaration is a true and correct copy of the United States Patent and Trademark Office's "*Office Action in Ex Parte Reexamination*," mail-stamped by the PTO dated April 23, 2008, regarding U.S. Patent No. "RE37545."

     I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration is executed at San Diego, California.

Dated:  May 15, 2008               _____    s/Andrew D. Skale_____
                                     Andrew D. Skale

4328622v.1

REDACTED

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ASPEX EYEWEAR, INC. ) | |
| CONTOUR OPTIK, INC., ) | |
| ) | |
| Plaintiffs/Counter-Defendants ) | Case No. 07 Civ. 2373 (DC) |
| ) | |
| vs. ) | |
| ) | |
| CLARITI EYEWEAR, INC., ) | |
| ) | |
| Defendant/Counter-Claimant ) | |

## DEFENDANT'S SECOND SUPPLEMENTAL RESPONSES AND OBJECTIONS TO

## PLAINTIFFS' FIRST SET OF INTERROGATORIES

EX 1

Eyewear, Inc.; Aspex Eyewear, Inc.; Contour Optik, Inc.; Revolution; Elite; Viva; and Marchon Eyewear, Inc.

## INTERROGATORY NO. 16:

State, on an element-by-element basis, the full factual basis for your contention in your affirmative defenses ¶¶25 and 29, and Counterclaims ¶¶ 8 and 12, that your Magnetic Eyewear Products do not infringe the '545 and '747 Patent, either literally or under the doctrine of equivalents; and identify all documents and things supporting your contentions.

## SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 16:

Clariti incorporates by reference its previous objections and responses to this Interrogatory.  Subject to and without waiving the objections stated in Clariti's previous responses, Clariti has attached hereto a chart showing the basis for why Clariti's products do not infringe the asserted claims of the patents-in-suit.  [*See* Exhibit A.]  Clariti notes that this information likely will be the subject of expert testimony and analysis and therefore reserves the right to supplement this information when such expert information is required to be produced. Moreover, Clariti reserves the right to supplement this information after Plaintiffs provide additional information concerning their claims, their constructions of the asserted claims, and the patents-in-suit.  Furthermore, Clariti notes that discovery in this case is on-going and reserves the right to supplement this information after further information and/or discovery is obtained and/or reviewed.

## INTERROGATORY NO. 18:

8

  
**EXHIBIT A**

| U.S. Patent No. 6,109,747[1] | Non-Infringement |
|---|---|
| 10. An eyeglass device for coupling to a primary frame, the primary frame including a first bridge and two sides, each side of the primary frame having a stud, each stud including a magnetic material, the eyeglass device comprising: | Clariti's products do not include "the primary frame including a first bridge and two sides, each side of the primary frame having a stud, each stud including a magnetic material" either literally or under the doctrine of equivalents. For example, each side of the AIRMAG frame does not have a stud and each alleged stud does not include a magnet. |
| an auxiliary frame for disposing in front of the primary frame, the auxiliary frame including a second bridge and two sides, each side having an extension extended rearward toward the primary frame and extended over one of the studs, the extensions each including a rear end having a first flange extended downward; and | Clariti's products do not include "the auxiliary frame including a second bridge and two sides, each side having an extension extended rearward toward the primary frame and extended over one of the studs, the extensions each including a rear end having a first flange extended downward" either literally or under the doctrine of equivalents. For example, the AIRMAG sunglass frames do not have two sides where each side has an extension extended rearward toward the primary frame. In addition, there is no "rear end" and there is no "rear end having a first flange extended downward" in the AIRMAG sunglass frame. |
| wherein said first flanges, themselves not being magnets, each includes a magnetic material for magnetically engaging in a lateral manner with the magnetic material in each stud and for securing said auxiliary frame to said primary frame; and | Clariti's products do not include "wherein said first flanges, themselves not being magnets, each includes a magnetic material for magnetically engaging in a lateral manner with the magnetic material in each stud and for securing said auxiliary frame to said primary frame" either literally or under the doctrine of equivalents. For example, the AIRMAG sunglass frames do not have flanges, themselves not being magnets. If there is a flange in the AIRMAG sunglass frame, the whole flange is a magnet. Further, there is no magnet in what are alleged to be the studs in the AIRMAG sunglass frame. Also, to the extent there is a first flange in the AIRMAG sunglass frame, it does not "engage in a lateral manner with the magnetic material in each stud." |
| when the auxiliary frame is coupled to the primary frame, the extensions can be | Clariti's products do not include "when the auxiliary frame is coupled to the primary frame, |

[1] Plaintiffs have only accused the AIRMAG frames without a nose bridge magnet, and thus these charts are only directed to those products.

| | |
|---|---|
| supported by the studs to prevent the auxiliary frame from moving downward relative to the primary frame; and | the extensions can be supported by the studs to prevent the auxiliary frame from moving downward relative to the primary frame" either literally or under the doctrine of equivalents. For example, the AIRMAG sunglass frames are not coupled to the AIRMAG frames. Also, there are no extensions, as noted above. Further, the AIRMAG sunglass frames can move downward even when the AIRMAG sunglass frames are on the AIRMAG frames. |
| the flanges are located behind the studs to further secure the auxiliary frame to the primary frame, and to reduce the likelihood of the auxiliary frame from being disengaged from the primary frame if the auxiliary frame is being pulled forward relative to the primary frame. | Clariti's products do not include "the flanges are located behind the studs to further secure the auxiliary frame to the primary frame, and to reduce the likelihood of the auxiliary frame from being disengaged from the primary frame if the auxiliary frame is being pulled forward relative to the primary frame" either literally or under the doctrine of equivalents. For example, the AIRMAG sunglass frames do not have flanges that are located behind the studs. Also, when the AIRMAG sunglass frames are on the AIRMAG frames, the sunglass frames can still be removed by pulling forward. Also, the AIRMAG sunglass frames are not further secured to the AIRMAG frames. |
| 12. A primary frame adapted to support an auxiliary frame, which includes a first bridge and two sides, each side having an extension and each extension including a rear end having a first flange extended downward, each flange, itself not being a magnet, including a magnetic material, the primary frame comprising: | Clariti's products do not include "which includes a first bridge and two sides, each side having an extension and each extension including a rear end having a first flange extended downward, each flange, itself not being a magnet, including a magnetic material" either literally or under the doctrine of equivalents. For example, the AIRMAG sunglass frames do not have two sides, each side having an extension. In addition, there is no "rear end" and there is no "rear end having a first flange extended downward." Also, the AIRMAG sunglass frames do not have flanges, themselves not being magnets. If there is a flange in the AIRMAG sunglass frame, the whole flange is a magnet. |
| a second bridge; and two sides, each having a stud, each stud including a magnetic material; | Clariti's products do not include "and two sides, each having a stud, each stud including a magnetic material" either literally or under the doctrine of equivalents. For example, the AIRMAG frames do not have two sides where each side has a stud. |

| | |
|---|---|
| | Also, to the extent there are studs in the AIRMAG frames, there is no magnets in those studs.. |
| wherein when the primary frame is supporting the auxiliary frame, each magnetic material of the primary frame magnetically engages in a lateral manner with one of the magnetic materials of the auxiliary frame for securing said auxiliary frame to said primary frame; | Clariti's products do not include "wherein when the primary frame is supporting the auxiliary frame, each magnetic material of the primary frame magnetically engages in a lateral manner with one of the magnetic materials of the auxiliary frame for securing said auxiliary frame to said primary frame" either literally or under the doctrine of equivalents.  For example, there is no engaging in a lateral manner as to the AIRMAG frame and the AIRMAG sunglass frame.  Further, there is no "each of the magnetic material of the primary frame magnetically engages in a lateral manner with one of the magnetic materials of the auxiliary frame."  In addition, there are no magnets in the AIRMAG frame.  Moreover, the AIRMAG sunglass frames are not secured to the AIRMAG frame. |
| each stud is extended over by one of the extensions, and can support that extension to prevent the auxiliary frame from moving downward relative to the primary frame; and | Clariti's products do not include "each stud is extended over by one of the extensions, and can support that extension to prevent the auxiliary frame from moving downward relative to the primary frame" either literally or under the doctrine of equivalents.  For example, there are no studs or extensions, as noted above.  Further, the AIRMAG sunglass frame can move downward even when the AIRMAG sunglass frames are on the AIRMAG frames. |
| the flanges are located behind the studs to further secure the auxiliary frame to the primary frame, and to reduce the likelihood of the auxiliary frame from being disengaged from the primary frame if the auxiliary frame is being pulled forward relative to the primary frame. | Clariti's products do not include "the flanges are located behind the studs to further secure the auxiliary frame to the primary frame, and to reduce the likelihood of the auxiliary frame from being disengaged from the primary frame if the auxiliary frame is being pulled forward relative to the primary frame" either literally or under the doctrine of equivalents.  For example, the AIRMAG sunglass frames do not have flanges that are located behind the studs.  Also, when the AIRMAG sunglass frames are on the AIRMAG frames, the sunglass frames can still be removed by pulling forward.  Also, the AIRMAG sunglass frames are not further secured to the AIRMAG frames. |

13

| U.S. Patent No. RE 37,545[2] | Non-Infringement |
|---|---|
| 23. An eyeglass device comprising: | |
| an auxiliary spectacle frame for supporting auxiliary lenses therein, said frame including a front side, a rear side, and oppositely positioned side portions, each of said side portions having an arm extended therefrom, each of said arms having a rearwardly directed free end for securing a magnetic member, and a pair of magnetic members respectively secured in the free ends of said arms, said arms and said pair of magnetic members adapted to extend across respective side portions of a primary spectacle frame so that said pair of magnetic members can vertically engage corresponding magnetic members on a primary spectacle frame. | Clariti's products do not include "each of said side portions having an arm extended therefrom" either literally or under the doctrine of equivalents. For example, each side of the AIRMAG sunglass frame does not include an arm.

Clariti's products do not include "each of said arms having a rearwardly directed free end for securing a magnetic member" either literally or under the doctrine of equivalents. For example, the AIRMAG sunglass frame does not include a rearwardly directed free end. Also, the AIRMAG sunglass frames do not have a free end that is for securing a magnetic member.

Clariti's products do not include "a pair of magnetic members respectively secured in the free ends of said arms" either literally or under the doctrine of equivalents. For example, there are not a pair of magnetic members in each alleged free end. Also, there is no magnetic members "secured" in the alleged free ends.

Clariti's products do not include "said arms and said pair of magnetic members adapted to extend across respective side portions of a primary spectacle frame so that said pair of magnetic members can vertically engage corresponding magnetic members on a primary spectacle frame" either literally or under the doctrine of equivalents. For example, there are no magnets in the AIRMAG frames. Furthermore, the alleged pair of magnetic members in the AIRMAG sunglass frames do no extend across the alleged side portions of the AIRMAG frames. Further, there is no such vertical engagement. Also, there is no corresponding magnetic member in the AIRMAG frames to the AIRMAG sunglass frames. |

[2] Plaintiffs included an infringement chart that only included claim 23. Hence a non-infringement chart for claim 23 is below

14



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/008,864 | 09/13/2007 | RE37545 | 36337-002 | 4206 |

27123      7590      04/23/2008

MORGAN & FINNEGAN, L.L.P.
3 WORLD FINANCIAL CENTER
NEW YORK, NY  10281-2101

| EXAMINER |
|---|
|  |

| ART UNIT | PAPER NUMBER |
|---|---|
|  |  |

DATE MAILED: 04/23/2008

Please find below and/or attached an Office communication concerning this application or proceeding.

PTO-90C (Rev. 10/03)

EX 2

| *Office Action in Ex Parte Reexamination* | Control No.<br>90/008,864 | Patent Under Reexamination<br>RE37545 ET AL. |
|---|---|---|
| | Examiner<br>Glenn K. Dawson | Art Unit<br>3993 | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

a☐ Responsive to the communication(s) filed on _____ .      b☐ This action is made FINAL.
c☐ A statement under 37 CFR 1.530 has not been received from the patent owner.

A shortened statutory period for response to this action is set to expire <u>1</u> month(s) from the mailing date of this letter.
Failure to respond within the period for response will result in termination of the proceeding and issuance of an *ex parte* reexamination certificate in accordance with this action. 37 CFR 1.550(d). **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**
If the period for response specified above is less than thirty (30) days, a response within the statutory minimum of thirty (30) days will be considered timely.

Part I      THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:

1. ☐ Notice of References Cited by Examiner, PTO-892.      3. ☐ Interview Summary, PTO-474.
2. ☒ Information Disclosure Statement, PTO/SB/08.           4. ☐ _____

Part II      SUMMARY OF ACTION

1a. ☒ Claims *1-9,12,13,16-20,23,24 and 31-34* are subject to reexamination.

1b. ☒ Claims *10,11,14,15,21,22 and 25-30* are not subject to reexamination.

2. ☐ Claims _____ have been canceled in the present reexamination proceeding.

3. ☐ Claims _____ are patentable and/or confirmed.

4. ☒ Claims *1-9,12,13,16-20,23,24 and 31-34* are rejected.

5. ☐ Claims _____ are objected to.

6. ☐ The drawings, filed on _____ are acceptable.

7. ☐ The proposed drawing correction, filed on _____ has been  (7a)☐ approved  (7b)☐ disapproved.

8. ☐ Acknowledgment is made of the priority claim under 35 U.S.C. § 119(a)-(d) or (f).

     a)☐ All  b)☐ Some*  c)☐ None    of the certified copies have

      1☐ been received.

      2☐ not been received.

      3☐ been filed in Application No. _____ .

      4☐ been filed in reexamination Control No. _____.

      5☐ been received by the International Bureau in PCT application No. _____.

     * See the attached detailed Office action for a list of the certified copies not received.

9. ☐ Since the proceeding appears to be in condition for issuance of an *ex parte* reexamination certificate except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte* Quayle, 1935 C.D. 11, 453 O.G. 213.

10. ☐ Other: _____

cc: Requester (if third party requester)

Application/Control Number: 90/008,864                          Page 2
Art Unit: 3993

## Reexamination

### Claim Rejections - 35 USC § 103

The following is a quotation of 35 U.S.C. 103(a) which forms the basis for

all obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically
> disclosed or described as set forth in section 102 of this title, if the
> differences between the subject matter sought to be patented and the
> prior art are such that the subject matter as a whole would have been
> obvious at the time the invention was made to a person having ordinary
> skill in the art to which said subject matter pertains. Patentability shall
> not be negatived by the manner in which the invention was made.

This application currently names joint inventors. In considering

patentability of the claims under 35 U.S.C. 103(a), the examiner presumes that

the subject matter of the various claims was commonly owned at the time any

inventions covered therein were made absent any evidence to the contrary.

Applicant is advised of the obligation under 37 CFR 1.56 to point out the

inventor and invention dates of each claim that was not commonly owned at

the time a later invention was made in order for the examiner to consider the

applicability of 35 U.S.C. 103(c) and potential 35 U.S.C. 102(e), (f) or (g) prior

art under 35 U.S.C. 103(a).

Application/Control Number: 90/008,864                                  Page 3
Art Unit: 3993

Claims 1-9,12,13,16-20,23,24, and 31-34 are rejected under 35 U.S.C.

103(a) as being unpatentable over Martin-'244 in view of Nishioka-5642177

or Sadler-5416537.

With respect to claim 1, Martin discloses an eyeglass device having a

primary spectacle frame 12 having two side portions with extensions 18,20

pivotally coupling to leg means 14,16, an auxiliary spectacle frame 24 having

two side portions each having an arm 40,42, for extending over and engaging

the upper side portions of the primary spectacle frame; and the auxiliary frame

is stably supported on the primary frame and being prevented form falling

downward relative to the primary frame due to clips 40,42 and 46 and due to

the clips resting on top of extensions 18,20. As seen in fig. 2, the clip hooks

clearly extend across the extensions from the front side past the rear side.

However, magnetic members secured in projections secured to the rear and

side portions of the primary frame, and magnetic members secured to the

arms for engaging the other magnetic members is not disclosed. Martin does

disclose that the purpose of the invention is to provide a means by which an

auxiliary frame could be mounted to the primary frame in a removable manner

and in which the mounting is nearly undetectable.

Application/Control Number: 90/008,864                     Page 4
Art Unit: 3993

Both Nishioka and Sadler teach of using magnets on primary frames for

coupling to magnets on projections of auxiliary frames. This produces a simple,

stable and removable manner in which to couple auxiliary frames to primary

frames. It would have been obvious to have provided the arms 40,42 with

magnets for mating with magnets placed on either frames 10,12, and/or

extensions 18,20, as taught by Nishioka and Sadler, as this would further act

to supplement the clips in stably supporting the auxiliary frames on the primary

frames and would still allow the auxiliary frames to be easily attached to and

detached from the primary frames.

The specific placement of the magnets on the two frames would be

obvious to one skilled in the art. Any surface of the clips 40,42 and either

frames 10,12 or extensions 18,20 which come into contact with each other

would be obvious placements for the magnets. For example, magnets could be

placed on the top of extensions 18 and 20 and couple to magnets placed on

the bottom of hooks 40 and 42. Or magnets could be placed on the front-

facing side of the part of the hook which extends rearwardly of the rear portion

of the frames 10,12 and could couple to a magnet placed on the back side or

rear of the frame portions 10,12 which abut the hooks. The magnets could be

either embedded into the material making up the frames, extensions or hooks,

Application/Control Number: 90/008,864                           Page 5
Art Unit: 3993

or could be mounted to a small projection placed on these structures. One

skilled in the art would recognize that either structure would work equally well.

Additionally, simply rotating the hook members 40,42 ninety (90) degrees such

that the extensions extend vertically downward instead of horizontally across

would also have been an obvious manner in which to allow the hooks to latch

onto extensions 18,20 instead of the frames. Any of these configurations are

considered to be obvious design choices. One skilled in the art would have had

every reason to expect success in placing the magnetic coupling members in

any of the positions presented above, as any two surfaces on the frames or

extensions of the primary frame and on the clips hooks 40,42 of the auxiliary

frame which are design to abut each other would present efficient surfaces for

holding the magnets in such a position that they would be readily engaged by a

corresponding magnet on the opposite frame.

    The result of the proposed combination would yield the predictable result

of stably removably supporting an auxiliary frame on a primary frame via both

friction from the clips and magnetic attraction force through the use of

complementary magnets on the two frames. Additionally, it would have been

obvious to try magnet couplings from the number of known means for

attaching auxiliary frames to primary frames as one skilled in the art would

Application/Control Number: 90/008,864                    Page 6
Art Unit: 3993

have had every reason to expect success in that the magnets would be expected to behave as all magnets behave and like poles attracting each other could obviously be used as a coupling means for two components desired to be removably, stably coupled together.

    With respect to claim 2, since the projections holding the 1st magnetic members do not attach to the top of the frame, the projections and magnets are clearly below the upper side portion of the primary frame. When the hook is rotated ninety (90) degrees the magnet is downward toward the projections. Even when the hooks are not rotated, when the magnet is placed on the bottom portion of the hook clips 40,42, then the magnet extends downward toward the projections as well.

    With respect to claim 3, both Sadler and Nishioka disclose that both magnetic members can be magnets.

    With respect to claim 4, the lenses in the frames of Martin define a vertical plane. As outlined above with respect to claim 1, the magnets on the primary frames or extensions would have horizontal surfaces when placed on the rear portions of the frames or on the top rear-facing surfaces of the extensions 18,20.

    Claim 5 is rejectable for the same reason as claim 2.

Application/Control Number: 90/008,864                    Page 7
Art Unit: 3993

With respect to claim 6, since the magnets on the auxiliary clip hooks

40,42 are oriented to be on the bottom of the clip hooks or on the front-facing

surfaces of the clip hooks, either of these would have horizontal surfaces.

With respect to claims 7-9, see claim 3.

With respect to claim 12, As noted above with respect to claim 1, a

magnetic member on the rear side of the extension will obviously couple to a

magnetic member on the front-facing  side of the hook clip member when

rotated ninety (90) degrees.

With respect to claim 13, see claims 3 and 7-9.

With respect to claims 16-20, see claims 1 and 12.

With respect to claim 23, see claim 1 for the description of Martin's

auxiliary frame. The bent hook arm clips 40,42 are adapted to extend across

side portions of the primary spectacle frame so that the magnetic members on

the bent hook arm clips can vertically engage magnetic members on a primary

spectacle frame.

With respect to claim 24, see the description of the auxiliary frame

member with respect to claim 2.

With respect to claim 31, see the description of claim 2.

With respect to claims 32-34, see claim 1.

Application/Control Number: 90/008,864                                        Page 8
Art Unit: 3993

Therefore, all of the claims which were requested to be re-examined are

hereby rejected under 103(a) under Martin in view of Nishioka or Sadler.

### Extensions of Time

Extensions of time under 37 CFR 1.136(a) will not be permitted in these

proceedings because the provisions of 37 CFR 1.136 apply only to "an

applicant" and not to parties in a reexamination proceeding.  Additionally, 35

U.S.C. 305 requires that reexamination proceedings "will be conducted with

special dispatch" (37 CFR 1.550(a)).  Extension of time in *ex parte*

reexamination proceedings are provided for in 37 CFR 1.550(c).

### Litigation

The patent owner is reminded of the continuing responsibility under 37

CFR 1.565(a) to apprise the Office of any litigation activity, or other prior or

concurrent proceeding, involving Patent No. RE 37545 throughout the course

of this reexamination proceeding.  The third party requester is also reminded of

the ability to similarly apprise the Office of any such activity or proceeding

throughout the course of this reexamination proceeding.  See MPEP §§ 2207,

2282 and 2286.

### Amendments in Reexamination Proceedings

Application/Control Number: 90/008,864                                    Page 9
Art Unit: 3993

    Patent owner is notified that any proposed amendment to the specification and/or claims in this reexamination proceeding must comply with 37 CFR 1.530(d)-(j), must be formally presented pursuant to 37 CFR 1.52(a) and (b), and must contain any fees required by 37 CFR 1.20(c).

### *Submissions*

    In order to ensure full consideration of any amendments, affidavits or declarations, or other documents as evidence of patentability, such documents must be submitted in response to this Office action. Submissions after the next Office action, which is intended to be a final action, will be governed by the requirements of 37 CFR 1.116, after final rejection and 37 CFR 41.33 after appeal, which will be strictly enforced.

### *Service of Papers*

    After filing of a request for ex parte reexamination by a third party requester, any document filed by either the patent owner or the third party requester must be served on the other party (or parties where two or more third party requester proceedings are merged) in the reexamination proceeding in the manner provided in 37 CFR 1.248. The document must reflect service or the document may be refused consideration by the Office. See 37 CFR 1.550(f).

### *Notification of Concurrent Proceedings*

Application/Control Number: 90/008,864                          Page 10
Art Unit: 3993

The patent owner is reminded of the continuing responsibility under 37
CFR 1.565(a) to apprise the Office of any litigation activity, or other prior
or concurrent proceeding, involving Patent No. 6,213,224 throughout the
course of this reexamination proceeding. Likewise, if present, the third
party requester is also reminded of the ability to similarly apprise the
Office of any such activity or proceeding throughout the course
of this reexamination proceeding. See MPEP §§ 2207, 2282 and 2286.


### Correspondence

All correspondence relating to this ex parte reexamination proceeding should
be directed as follows:

By U.S. Postal Service Mail to:
Mail Stop Ex Parte Reexam
ATTN: Central Reexamination Unit Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450


By FAX to: (571) 273-9900
Central Reexamination Unit


By hand to: Customer Service Window
Randolph Building
401 Dulany St.
Alexandria, VA 22314

Application/Control Number: 90/008,864                          Page 11
Art Unit: 3993

NOTICE RE PATENT OWNER'S CORRESPONDENCE ADDRESS Effective May 16,

2007, 37 CFR 1.33(c) has been revised to provide that:

The patent owner's correspondence address for all communications in an ex

parte reexamination or an interpartes reexamination is designated as the

correspondence address of the patent.

Revisions and Technical Corrections Affecting Requirements for Ex Parte and

InterPartes Reexamination, 72 FR 18892 (April 16, 2007)(Final Rule)

The correspondence address for any pending reexamination proceeding not

having the same correspondence address as that of the patent is, by way of

this revision to 37 CFR 1.33(c), automatically changed to that of the patent file

as of the effective date.

This change is effective for any reexamination proceeding which is pending

before the Office as of May 16, 2007, including the present reexamination

proceeding, and to any reexamination proceeding which is filed after that date.

Parties are to take this change into account when filing papers, and direct

communications accordingly.



In the event the patent owner's correspondence address listed in the papers

Application/Control Number: 90/008,864                        Page 12
Art Unit: 3993

(record) for the present proceeding is different from the correspondence

address of the patent, it is strongly encouraged that the patent owner

affirmatively file a Notification of Change of Correspondence Address in the

reexamination proceeding and/or the patent (depending on which address

patent owner desires), to conform the address of the proceeding with that of

the patent and to clarify the record as to which address should be used for

correspondence.


Telephone Numbers for reexamination inquiries:


Reexamination and Amendment Practice
(571) 272-7703
Central Reexam Unit (CRU)
(571) 272-7705
Reexamination Facsimile Transmission No.
(571) 273-9900




Any inquiry concerning this communication or earlier communications from the
Reexamination Legal Advisor or Examiner, or as to the status of this
proceeding, should be directed to the Central Reexamination Unit at telephone
number (571) 272-7705.

Application/Control Number: 90/008,864                    Page 13
Art Unit: 3993

Any inquiry concerning this communication or earlier communications from the
Reexamination Legal Advisor or Examiner, or as to the status of this
proceeding, should be directed to the Central Reexamination Unit at telephone
number (571) 272-7705.

/Glenn K Dawson/
Primary Examiner, Art Unit 3993

GLENN K. DAWSON
PRIMARY EXAMINER

Glenn K. Dawson Primary Examiner
Central Reexamination Unit 3993
(571) 272-4694

Conferee:

Conferee:


**United States Patent and Trademark Office**                                    **PATENTS**

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

Patents > Search Collections > MPEP > § 1.550 Conduct of - Patent Rules

Go to **MPEP - Table of Contents**

**browse before**

# § 1.550 Conduct of - Patent Rules

## § 1.550 Conduct of *ex parte* reexamination proceedings.

(a) All *ex parte* reexamination proceedings, including any appeals to the Board of Patent Appeals and Interferences, will be conducted with special dispatch within the Office. After issuance of the *ex parte* reexamination order and expiration of the time for submitting any responses, the examination will be conducted in accordance with §§ **1.104** through **1.116** and will result in the issuance of an *ex parte* reexamination certificate under § **1.570**.

(b) The patent owner in an *ex parte* reexamination proceeding will be given at least thirty days to respond to any Office action. In response to any rejection, such response may include further statements and/or proposed amendments or new claims to place the patent in a condition where all claims, if amended as proposed, would be patentable.

(c) The time for taking any action by a patent owner in an *ex parte* reexamination proceeding will be extended only for sufficient cause and for a reasonable time specified. Any request for such extension must be filed on or before the day on which action by the patent owner is due, but in no case will the mere filing of a request effect any extension. Any request for such extension must be accompanied by the petition fee set forth in § **1.17**(g). See § **1.304(a)** for extensions of time for filing a notice of appeal to the U.S. Court of Appeals for the Federal Circuit or for commencing a civil action.

(d) If the patent owner fails to file a timely and appropriate response to any Office action or any written statement of an interview required under § **1.560**(b), the prosecution in the *ex parte* reexamination proceeding will be a terminated prosecution, and the Director will proceed to issue and publish a certificate concluding the reexamination proceeding under § **1.570** in accordance with the last action of the Office.

(e) If a response by the patent owner is not timely filed in the Office,

(1) The delay in filing such response may be excused if it is shown to the satisfaction of the Director that the delay was unavoidable; a petition to accept an unavoidably delayed response must be filed in compliance with § **1.137(a)**; or