UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - -x

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11|26|08
```

ASPEX EYEWEAR, INC. and          :
CONTOUR OPTIK, INC.,

                    :

           Plaintiffs,

                    :         **MEMORANDUM DECISION**

    - against -

                    :         07 Civ. 2373 (DC)

CLARITI EYEWEAR, INC.,

                    :

           Defendant.

                    :

- - - - - - - - - - - - - - - - - - -x

**APPEARANCES:**    COLLEN INTELLECTUAL PROPERTY LAW, P.C.
                By:  Jess M. Collen, Esq.
                      Jeffrey A. Lindenbaum, Esq.
                      Matthew Clifton Wagner, Esq.
                The Holyoke-Manhattan Building
                80 South Highland Avenue
                Ossining, New York  10562

                  - and-

                LERNER, DAVID, LITTENBERG, KRUMHOLZ & MENTLIK, LLP
                By:  Russell William Faegenburg, Esq.
                      Steven Louis Procaccini, Esq.
                600 South Avenue West
                Westfield, New Jersey  07090
                Attorneys for Plaintiffs

                MINTZ LEVIN COHN FERRIS GLOVSKY & POPEO, P.C.
                By:  Kevin N. Ainsworth, Esq.
                      Seth Robert Goldman, Esq.
                      Andrew D. Skale, Esq.
                666 Third Avenue, 25th Floor
                New York, New York  10017
                Attorneys for Defendant

**CHIN, District Judge**

        This is a patent infringement case concerning clip-on
eyewear that can be attached to eyeglass frames through the use
of magnets.  In March 2007, plaintiffs Aspex Eyewear, Inc.
("Aspex") and Contour Optik, Inc. ("Contour") sued defendant
Clariti Eyewear, Inc. ("Clariti"), accusing products in Clariti's

AirMag line of infringing United States Patent Number 6,109,747 (the "'747 Patent") and Reissued Patent Number RE37,545 (the "'545 Patent").

Clariti moved for summary judgment with respect to both patents. After the motion was fully submitted, however, the parties settled their dispute regarding the '545 Patent. Hence, only plaintiffs' claims with respect to the '747 Patent remain. For the reasons set forth below, defendant's motion is granted.

## BACKGROUND

### A. The Facts

The following facts are undisputed.

#### 1. The '747 Patent

On August 29, 2000, the United States Patent and Trademark Office (the "PTO") issued the '747 Patent, entitled "Eyeglass Frames with Magnets in Flanges," to David Yinkai Chao. (Compl. ¶ 8). The patent describes an "eyeglass combination" comprised of a primary eyeglass frame and an auxiliary frame that is attached from the front of the primary frame and held in place via magnets, studs, and strategically placed flanges. (Faegenburg Decl. Ex. B at 1).

Chao assigned all rights, title, and interest in the '747 Patent to Contour. (Compl. ¶ 8). Contour is now the record owner of the '747 Patent and Aspex is the exclusive licensee of the '747 Patent in the United States, with rights to make, use and sell products according to the patent and to sue for infringement in the United States. (Id. ¶¶ 9, 10).

-2-

## 2.   **Clariti's AirMag Line**

In or around February 2003, Clariti launched its AirMag line of magnetically attachable eyeglass products. (Yonemoto Decl. ¶ 3). Sales were relatively small in 2003, totaling less than $45,000. (Id. ¶ 14). From 2004 onwards sales increased substantially, totaling well over $150,000 in 2004 and around half a million dollars in 2005 as well as in 2006. (Id. ¶ 15). Clariti applied for and received trademark protection for the AirMag name in 2004. (Id. ¶ 16). It spent resources marketing and promoting the AirMag line, including at the twice-annual International Vision Expo (id. ¶ 17), and its sales force grew from 22 to 42 people in 2004 (id. ¶ 18). At the end of 2006, Clariti had 38 sales personnel. Clariti moved to a larger, more expensive facility in 2007. (Id. ¶ 19). The move was prompted in part by the need to accommodate the space and infrastructure requirements of the AirMag line. (Id.).

## 3.   **The Parties Exchange Letters**

Soon after the launch of its AirMag products in 2003, Clariti received a letter from counsel for Aspex dated March 7, 2003. (Yonemoto Decl. Ex. C). The letter alerted Clariti to Aspex's patents related to "magnetically attachable eyeglass frames." (Id.). It identified the '545 Patent as well as U.S. Patent Numbers 5,737,054 (the "'054 Patent"), 6,012,811 (the "'811 Patent"), and 6,092,896 (the "'896 Patent") and stated:

> It has been our policy and continues to be
> our strong intention to fully and vigorously
> enforce our rights under the exclusive
> license to these magnetic frame attachments.

(Id.).

-3-

The letter stated that some of Clariti's products might be covered by the patents and asked that Clariti:

> [I]mmediately confirm for us that you have stopped selling any frames, frame attachments or parts in violation of our rights under the patent. We also ask you to supply us with the identity of the source of these goods and information concerning the number of pieces sold to date. We will then be in a position to reach a prompt and reasonable resolution of this situation.

(Id.).

Aspex, through its counsel, warned that courts could issue an injunction for patent infringement and award attorneys' fees and treble damages in some circumstances. (Id.). It characterized the matter as "very urgent and serious." (Id.). Soon thereafter, Aspex, through its counsel, sent a virtually identical letter to Clariti dated March 10, 2003, additionally identifying the '747 Patent as possibly infringed by Clariti's products. (Yonemoto Decl. Ex. D).

Counsel for Clariti responded by letter dated March 18, 2003. (Id. Ex. E). Counsel stated "[i]t is Clariti Eyewear's policy never to willfully infringe any valid enforceable patent," and requested further information from Aspex, including the "file histories of the Aspex patents (including parents)." (Id.). Counsel also made the following request: "[t]here are a large number of claims. Please specify which claims you believe may cover Clariti's products by model number." (Id.).

Aspex's counsel responded by letter dated May 12, 2003. (Yonemoto Decl. Ex. F). In response to Clariti counsel's request

-4-

that Aspex specify which patent claims might cover Clariti's
products, Aspex's counsel stated:

> We have provided you with the following list
> of claims we believe cover the frames sold by
> your client:
>
> U.S. Patent No. 5,737,054: Claim 1; and
> U.S. Patent No. 6,012,811: Claims 1-4, 7, 9-14, 22-33.

(Id.).

The letter was accompanied by the file histories for
the '811 and '054 Patents only; it did not address the other
patents originally identified in the March 2003 letters, such as
the '747 Patent.

Clariti's counsel responded by letter dated June 26,
2003, denying infringement of the '811 and '054 Patents.
(Yonemoto Decl. Ex. G). The letter did not address whether
Clariti believed its products infringed any of the other patents
initially identified by Aspex's counsel, such as the '747 Patent.

Aspex and Clariti had no further communications about
any of the patents until August 2006, when Aspex's counsel wrote
stating that Clariti's AirMag products "directly infringe[] our
clients' patent rights with regard to the '747 patent," and
demanding that Clariti "cease and desist all activities related
to the AirMag." (Yonemoto Decl. Ex. M). Counsel for Clariti
responded by letter dated September 21, 2006, denying
infringement and asserting that the doctrines of laches and
equitable estoppel barred enforcement of the patent. (Faegenburg
Decl. Ex. G).

-5-

## B. Prior Proceedings

Aspex and Contour filed the complaint in this action against Clariti on March 22, 2007, asserting infringement of the '545 and '747 Patents. On January 24, 2008, I granted plaintiffs' motion to strike some of defendant's affirmative defenses and to dismiss certain counter-claims, and I denied defendant's motion to dismiss the complaint. Clariti filed an amended answer February 7, 2008.

Following the close of discovery, Clariti moved for summary judgment on March 18, 2008. The parties stipulated on August 28, 2008, to dismiss plaintiffs' second claim for infringement of the '545 Patent as well as Clariti's counterclaims relating to the '545 Patent. Accordingly, only plaintiffs' claim under the '747 Patent remain.

## C. The Patent and Trademark Office Reexamination

After the filing of this lawsuit, Clariti sought reexamination of the '747 Patent from the PTO. The PTO granted reexamination in September 2007. (Skale Decl. Exs. S, T). On September 30, 2008, the PTO issued an interim decision rejecting claims 10 and 12 of the '747 Patent as invalid. (Ainsworth Decl. Ex. A). The rejection was due to a finding that the claims were anticipated under 35 U.S.C. § 102 by Japanese Patent Number JP 09-10148 issued to Iwamoto (the "Iwamoto Patent") and U.S. Patent Number 6,149,269, issued to Julie Madison (the "Madison Patent"). (Id.). Plaintiffs have indicated their intention to challenge the action "vigorously." (Pls.' Response to Ainsworth Decl. at 2).

-6-

## DISCUSSION

Clariti moves for summary judgment on the following bases: first, plaintiffs should be equitably estopped and barred by the doctrine of laches from enforcing the '747 Patent because their delay in bringing suit against Clariti was misleading and inequitable; second, claims 10 and 12 of the '747 Patent are invalid as anticipated and obvious under the prior art; and third, the '747 Patent is invalid and unenforceable due to plaintiffs' inequitable conduct in prosecuting the patent. Clariti also moves for a finding that this case is "exceptional" under 35 U.S.C. § 285 and an award of attorneys' fees.

Because there are no disputed issues of material fact regarding Clariti's estoppel defense, the case is appropriate for summary judgment on the issue of equitable estoppel. I agree that estoppel applies, barring plaintiffs' enforcement of the '747 Patent against Clariti; therefore I address only the first ground of Clariti's motion and its argument that the case is "exceptional."

## A. Summary Judgment Standard

Summary judgment will be granted when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986). Accordingly, the Court's task is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson

-7-

v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  Summary

judgment is inappropriate if, resolving all ambiguities and

drawing all inferences against the moving party, there exists a

dispute about a material fact "such that a reasonable

[factfinder] could return a verdict for the nonmoving party."

Id. at 248; see Bay v. Times Mirror Magazines, Inc., 936 F.2d

112, 116 (2d Cir. 1991).

         To defeat a motion for summary judgment, the nonmoving

party "must do more than simply show that there is some

metaphysical doubt as to the material facts."  Matsushita, 475

U.S. at 586.  The nonmoving party "must present concrete

particulars and cannot succeed with purely conclusory

allegations."  Fitch v. R.J. Reynolds Tobacco Co., 675 F. Supp.

133, 136 (S.D.N.Y. 1987) (citation omitted).  There is no issue

for trial unless there exists sufficient evidence in the record

favoring the party opposing summary judgment to support a verdict

in that party's favor.  Anderson, 477 U.S. at 249-50.

**B.    Equitable Estoppel**

**1.    Applicable Law**

         Equitable estoppel is a defense to patent infringement

and may serve as an absolute bar to a patentee's claim of

infringement.  Scholle Corp. v. Blackhawk Molding Co., Inc., 133

F.3d 1469, 1471 (Fed. Cir. 1998); ABB Robotics, Inc. V. GMFanuc

Robotics Corp., 52 F.3d 1062, 1063 (Fed. Cir. 1995).  The Federal

Circuit set out the elements of an equitable estoppel defense in

A.C. Aukerman Co. v. R.L. Chaides Constr. Co., 960 F.2d 1020,

1028 (Fed. Cir. 1992) (en banc).

First, a defendant must show the patentee, through misleading conduct, led the defendant to reasonably infer that the patentee did not intend to enforce its patent against the defendant.  Id.  Such conduct may include "specific statements, action, inaction, or silence where there was an obligation to speak."  Id.  Whether a patentee's conduct is misleading is evaluated from the perspective of the alleged infringer.  Wafer Shave Inc. v. Gillette Co., 857 F. Supp. 112, 119 (D. Mass. 1993), aff'd per curiam, 26 F.3d 140 (Fed. Cir. 1994).  A patentee's unfulfilled threats to enforce its patent have generally been deemed misleading conduct.  See Aukerman, 960 F.2d at 1042 ("In the most common situation, the patentee specifically objects to the activities currently asserted as infringement in the suit and then does not follow up for years."); Wafer Shave, 857 F. Supp. at 119-20 (patentee's conduct was misleading where it threatened but did not file suit until three and one half years later), Scholle, 133 F.3d at 1472 (patentee's inaction was misleading in light of patentee's previous threats to sue); cf. Hemstreet v. Computer Entry Sys. Corp., 972 F.2d 1290, 1295 (Fed. Cir. 1992) (patentee's silence was not misleading because he did not threaten litigation), Meyers v. Asics Corp., 974 F.2d 1304, 1308 (Fed. Cir. 1992) (no estoppel where patentee engaged in licensing negotiations and never threatened litigation).

Second, a defendant must show that it actually relied on the patentee's misleading conduct.  Aukerman, 960 F.2d at 1043.  This means that the alleged infringer "must have had a

-9-

relationship or communication with the plaintiff which lulls the infringer into a sense of security in going ahead" with its activities.  Id.

Third, a defendant must show that due to its reliance, it will be materially prejudiced if the patentee is allowed to proceed with its claim.  Id.  Prejudice may be a change of economic position or loss of evidence.  Id.  Economic prejudice arises when a defendant suffers the loss of monetary investments or incurs damages that likely would have been prevented by earlier suit.  State Contracting & Eng'q v. Condotte Am., Inc., 346 F.3d 1057, 1066 (Fed. Cir. 2003).  A nexus must be shown between the patentee's delay in filing suit and the expenditures; the alleged infringer must change his position because of and as a result of the delay.  Id. (citing Hemstreet, 972 F.2d at 1294); see also Ecolab, Inc. v. Envirochem, Inc., 264 F.3d 1358, 1371-72 (Fed. Cir. 2001).  This means the defendant must prove that the change in economic position would not have occurred had the patentee sued earlier.  Gasser Chair Co. v. Infanti Chair Mfg. Corp., 60 F.3d 770, 775 (Fed. Cir. 1995).

Finally, because the defense is an equitable one, a court must "take into consideration any other evidence and facts respecting the equities of the parties in exercising its discretion and deciding whether to allow the defense of equitable estoppel to bar the suit."  Aukerman, 960 F.2d at 1043.  An otherwise meritorious estoppel defense may be defeated if it is shown that the defendant is guilty of egregious conduct such as

-10-

copying or willful infringement. Wafer Shave, 857 F. Supp. at 119; see also Gasser Chair, 60 F.3d at 775-76 (district court erred in not considering whether defendant's copying of plaintiff's chairs could be egregious conduct); Aukerman, 960 F.2d at 1044 (defendant's testimony that he copied the patented subject matter should have been deemed misconduct to be weighed in court's decision). As the defense is an equitable one, the matter is to be decided by the court and not a jury, and the court is fully empowered to grant summary judgment if there are no triable fact issues and the court concludes equitable relief is warranted. 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure: Civil § 2731 (3d ed. 1998).

## 2. **Application**

### a. **Misleading Conduct**

No triable fact issue exists as to the misleading nature of plaintiffs' conduct. Aspex, through its counsel, placed Clariti "on notice" about several of its patents in its March 2003 letters, and declared its policy and intention to "fully and vigorously enforce our rights." (Yanemoto Decl. Exs. C, D). When Clariti sought additional information about which claims might be involved, however, Aspex failed to assert any claims of the '747 Patent in its May 12, 2003 response. Yet Aspex's counsel explicitly noted that it was responding to Clariti's query and included information about claims of the '054 and '811 Patents. (Id. Ex. F). Aspex did not mention any of the

-11-

patents again until 2006.  In this context, its silence and inaction were misleading as a matter of law.

The Massachusetts case <u>Wafer Shave</u> is instructive.  857 F. Supp. 112.  There, the plaintiff threatened suit against Gillette, the razor company.  Gillette responded, seeking additional information.  Plaintiff then failed to reassert its infringement claim for three and a half years.  Based on these undisputed facts, the district court found plaintiff's conduct misleading and granted summary judgment, holding the plaintiff equitably estopped from enforcing its patent.  <u>Id.</u> at 119-127.

The <u>Scholle</u> case presents a similar pattern of misleading conduct.  There, the plaintiff accused the defendant's product of infringing its patent on a valved water bottle cap system.  <u>Scholle</u>, 133 F.3d at 1470-71.  The defendant requested additional information but received no response.  Approximately sixteen months later, the defendant notified the plaintiff about one of its new products.  Plaintiff did not take action to enforce its patent against defendant's new product for almost three years.  <u>Id.</u>  The district court granted summary judgment on the defendant's equitable estoppel defense and the Federal Circuit affirmed, holding that in the context of the parties' course of dealing, plaintiff's silence was misleading.  <u>Id.</u> at 1472-73.

As <u>Wafer Shave</u> and <u>Scholle</u> show, a party's silence and inaction can be just as misleading as its affirmative statements and actions.  In cases where courts have determined a plaintiff's

-12-

silence was not misleading, the plaintiff had not initially threatened litigation. Therefore its silence and inaction could not be interpreted as abandonment of the claim, as it had not previously asserted any claim. See Hemstreet, 972 F.2d at 1292-94; Meyers v. Asics Corp., 974 F.2d at 1308-09. In this case, by contrast, Aspex placed Clariti on notice and threatened litigation under the '747 Patent, but then seemed to abandon any such claims through its silence.

Plaintiffs argue their actions were not misleading and that they neither threatened litigation nor indicated to Clariti that they were abandoning their infringement allegations. (Pls.' Opp'n Mem. at 3-6; Pls.'s 56.1 at 24-25). Plaintiffs' interpretation of the undisputed facts, however, is unreasonable. Aspex's March 2003 letters were not mere invitations for a "prompt and reasonable resolution" with Clariti. Rather, Aspex characterized the matter as "very urgent and serious" in its letters, discussed litigation, and noted that courts could award attorneys' fees and treble damages for infringement. (Yonemoto Decl. Exs. C, D). Aspex was not proposing a licensing or other arrangement in its communications; rather, it was threatening litigation. Following Clariti's June 26, 2003 response denying infringement of the '811 and '054 Patents, however, Aspex failed to follow up about any of its patents for more than three years. The only reasonable inference to be drawn from Aspex's conduct was that it had threatened litigation but no longer intended to pursue any claims against Clariti under the '747 Patent or any other patent.

-13-

Plaintiffs also argue that Clariti did not itself address the '747 Patent in communications with plaintiffs or their counsel. (Pls.' Opp'n Mem. at 4-5; Pls.' 56.1 at 25). Their contention that the burden was on Clariti to state or otherwise clarify that its products did not infringe the '747 Patent, however, does not raise a genuine issue of material fact. Clariti attempted to determine which claims Aspex believed were infringed. Aspex's failure to assert any claims of the '747 Patent in its response can only be understood as an abandonment of those claims. Accordingly, its conduct was misleading as a matter of law.

### b. **Reliance**

There is no genuine dispute that Clariti actually relied on plaintiffs' misleading conduct. In a declaration, Clariti president Dominique Yonemoto stated that following Aspex's May 2003 correspondence, she understood that Aspex was no longer accusing Clariti of infringing any claims of the '747 Patent. (Yonemoto Decl. ¶¶ 11-13). Clariti's June 26, 2003, response to Aspex's May 12, 2003 letter supports Yonemoto's representation about this belief. (Yonemoto Decl. Ex. G). In addition, Yonemoto states "had Aspex filed a patent infringement suit against the AirMag products at that time [2003], given the newness of the products and Clariti's lack of investment in them, Clariti would very likely have simply decided to stop selling the AirMag products and pursued other business opportunities." (Yonemoto Decl. ¶ 8). Clariti last communicated about the '054

-14-

and '811 Patents in 2003, stating it did not believe its products infringed any valid claims under the patents. The ball plainly was in plaintiffs' court to follow up about those or any other patents or claims they believed Clariti might have been infringing. Cf. Hemstreet, 972 F.2d at 1294-95 (patentee's silence was not misleading in part because it was defendant who failed to respond at end of series of communications). Instead, plaintiffs fell silent and did not communicate again with Clariti until three years later.

Plaintiffs argue that a lack of contemporaneous evidence of Clariti's reliance suggests Clariti was not actually misled into believing Aspex had abandoned its claim under the '747 Patent.[1] (Pls.' Opp'n Mem. at 5). Clariti has submitted evidence of its actual reliance on Aspex's conduct, however, even if not contemporaneous. (See Yonemoto Decl.). Additionally, the letters sent by Clariti's counsel in 2003 are contemporaneous evidence that support Yonemoto's statements in her declaration. (Id. Exs. E, G).

Plaintiffs also argue Clariti failed to obtain the advice of counsel before 2006 regarding its alleged infringement of the '747 Patent. This fact, even if true, however, does not create a genuine issue for trial about Clariti's lack of reliance on Aspex's misleading conduct. In light of Aspex's May 12, 2003 letter, Clariti had no reason to think Aspex still believed it to

---

[1]     Yonemoto's email account and hard drive from that time period have been lost. (Fagenberg Decl. Ex. O at 146-47). There is no suggestion that this loss was related to the litigation.

-15-

be infringing the '747 Patent. Clariti did obtain the advice of
counsel about the '054 and '811 Patents, as those were the ones
identified by Aspex, and it informed Aspex that it did not
believe its AirMag products infringed those patent claims.
(Yonemoto Decl. Ex. G). The fact that Clariti did not obtain
legal advice on the '747 Patent prior to 2006 reflects the
misleading nature of Aspex's conduct, not its lack of reliance.
Plaintiffs have not presented any evidence that raises a genuine
issue of material fact about Clariti's reliance on Aspex's
misleading conduct.

### c.    **Material Prejudice**

On the undisputed facts before the Court, I hold as a
matter of law that Clariti suffered material prejudice because of
plaintiffs' delay in bringing suit. As Yonemoto stated, if
plaintiffs had sued in 2003, Clariti would have stopped selling
AirMag and "pursued other business opportunities." (Yonemoto
Decl. ¶ 8). Clariti believed its AirMag products did not
infringe any valid claims of the '054 or '811 Patents as
identified by Aspex. (Id., Ex. G). As Aspex did not follow
through on its initial threat to sue, Clariti continued
investment in its AirMag line. (Id. ¶ 20). Clariti has
presented evidence showing that it invested monies in marketing
AirMag and obtaining trademark protection. (Id. Ex. P). It
increased its sales force and devoted a substantial percentage of
its promotional resources to the products. (Id. ¶¶ 17-18).
Additionally, Aspex's sales for its AirMag products grew

-16-

substantially from 2003 to 2006.  (Id. Exs. H-K).  This uncontradicted evidence establishes a nexus between plaintiffs' delay and Clariti's expenditures related to AirMag.  The only reasonable interpretation of these undisputed facts is that Clariti changed its economic position because of Aspex's delay.

Plaintiffs argue that Clariti could not have suffered any material economic prejudice because it did not manufacture the products but simply marketed them.  They further argue that Clariti's investments in the AirMag line were modest and not in reliance on Aspex's conduct.  (Pls.' Opp'n Mem. at 8-9; Pls.' 56.1 at 26-27).  These arguments are mostly unavailing or irrelevant.  Of Clariti's claimed damages related to Aspex's misleading conduct, only expenses incurred because of Clariti's 2007 move to a larger facility arguably lack a proper nexus to Aspex's litigation delay.  Otherwise, Clariti has shown economic prejudice sufficient to assert an estoppel defense.  The only possible factual dispute concerns the extent of Clariti's economic prejudice, not whether it suffered any such prejudice.  As marketer, Clariti invested in its products just as a manufacturer would have done.  It allocated twenty-five percent of its expenditures at the twice-annual International Vision Expo to the AirMag line (Yonemoto Decl. ¶ 17) and expanded its business by hiring additional sales staff.  These investments would not have occurred if Aspex had not misled Clariti into believing that it would not enforce its patents.  (Id. ¶ 8).  See also ABB Robotics, 52 F.3d at 1065 (capital investments are not

-17-

required for economic prejudice; proper inquiry is whether defendant's increased expenditures were related to actions taken by patentee). Accordingly, Clariti meets the requirement of economic prejudice as a matter of law.

### d. Other Equitable Considerations

Finally, I consider other equitable considerations. Plaintiffs argue that Clariti's continued sales of the AirMag line after receipt of Aspex's letters in 2003 show that it willfully infringed the patents. (Pls.' Opp'n Mem. at 7-8, 10-11). They base this argument on Clariti's failure in 2003 to obtain the advice of counsel about the '747 Patent, appearing to argue that this was reckless behavior constituting willful infringement under In re Seagate Tech., LLC, 497 F.3d 1360, 1371 (Fed. Cir. 2007), cert. denied, 128 S. Ct. 1445 (2008). The Federal Circuit in Seagate, however, made clear that there is no affirmative duty to obtain the opinion of counsel, and failure to obtain counsel alone cannot be evidence of willful infringement. Id. Additionally, as discussed above, in light of Aspex's May 12, 2003 letter, Clariti had no reason to think Aspex still believed it to be infringing the '747 Patent. The record contains no evidence of egregious copying or willful infringement.

### C. Attorneys' Fees

Clariti also moves for a determination that the case is "exceptional" under 35 U.S.C. § 285, which provides that the

-18-

court "in exceptional cases may award reasonable attorney fees to the prevailing party." Its motion is denied.

Exceptional cases are generally those involving frivolous or other bad faith litigation or those involving inequitable conduct by the patentee in procuring the patent. See Stephens v. Tech Intern., Inc., 393 F.3d 1269, 1273 (Fed. Cir. 2004); Brasseler, U.S.A. I, L.P. v. Stryker Sales Corp., 267 F.3d 1370, 1380 (Fed. Cir. 2001). The moving party must present clear and convincing evidence to establish an exceptional case. Brasseler, 267 F.3d at 1378-79 (citation and quotation marks omitted).

Here, Clariti cannot show, by clear and convincing evidence, that plaintiffs have engaged in the kind of conduct that would make this case "exceptional" under 35 U.S.C. § 285. Clariti argues Contour engaged in inequitable conduct in prosecuting the '747 Patent by failing to disclose known material prior art to the PTO. (Def.'s Mem. at 19-24). Although Clariti has presented evidence indicating '747 Patent inventor David Yinkai Chao knew that another inventor Julie Madison had filed a patent application before him, there is no evidence that Chao knew the content of Madison's application. Accordingly, Clariti has not shown that Chao had the requisite "intent to deceive" needed to establish inequitable conduct. See Bd. of Educ. ex rel. Bd. of Trs. v. Am. Bioscience, Inc., 333 F.3d 1330, 1343 (Fed. Cir. 2003).

-19-

Nor does the evidence support a finding, on a clear and convincing standard, that plaintiffs engaged in frivolous litigation. A frivolous infringement suit is one that the patentee knew or, on reasonable investigation, should have known was baseless. Stephens, 393 F.3d at 1273-74 (citation omitted). Clariti has not shown plaintiffs knew or should have known they could not successfully assert the '747 Patent against Clariti but pursued their infringement claim anyway. In fact, plaintiffs have sought to enforce the '747 Patent against other parties with some success. See, e.g., Chic Optic, Inc. v. E'Lite Optik, Inc., 524 F. Supp. 2d 794 (N.D. Tex. 2007) (construing contested claims of the '747 Patent); Aspex Eyewear, Inc. v. Miracle Optics, Inc., No. 01 Civ. 10396, 2003 WL 24854204 (C.D. Cal. Oct. 29, 2003) (denying defendant's motion for summary judgment). I also denied defendants' motion to dismiss earlier in this litigation. Aspex Eyewear, Inc. v. Clariti Eyewear, Inc., 531 F. Supp. 2d 620 (S.D.N.Y. 2008). Clariti has not shown this case to be "exceptional" under 35 U.S.C. § 285, warranting the award of attorneys' fees to it under that statute.

## CONCLUSION

For the foregoing reasons, Clariti's motion for summary judgment is granted and the complaint dismissed in its entirety under the doctrine of equitable estoppel. Clariti's motion for a finding that the case is "exceptional" under 35 U.S.C. § 285 is

denied.  The Clerk of the Court shall enter judgment dismissing

the complaint, with costs but without attorneys' fees.

SO ORDERED.

Dated:    New York, New York
          November 26, 2008

DENNY CHIN
United States District Judge